UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| BIRMINGHAM ASSOCIATES LTD, | : | Case No.  07 Civ. 11332 (SAS) |
|  | : |  |
|  | : | ECF Case |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ABBOTT LABORATORIES, | : |  |
|  | : |  |
| Defendant. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL ARBITRATION
## AND TO DISMISS OR STAY THIS LITIGATION

PATTERSON BELKNAP WEBB & TYLER LLP
William F. Cavanaugh, Jr. (WC-3474)
Nicolas Commandeur (NC-4280)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendant Abbott Laboratories*

# TABLE OF CONTENTS

Page Nos.

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND ..........................................................................................................................2

The ZoMaxx Stent ......................................................................................................................2

The Funding Agreement ..............................................................................................................2

The Keep Well Agreement ...........................................................................................................4

Termination of the ZoMaxx Stent Development Program ............................................................5

Filing of this Litigation and Related Arbitration ..........................................................................5

ARGUMENT...............................................................................................................................7

I.     THE DISPUTE BETWEEN ABBOTT AND
       BIRMINGHAM SHOULD BE ARBITRATED
       AND THIS LITIGATION  SHOULD BE DISMISSED. ........................................................7

II.    THIS LITIGATION SHOULD BE STAYED
       PENDING RESOLUTION OF THE ARBITRATION
       BETWEEN ALVE AND BIRMINGHAM. ..........................................................................11

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Better Benefits, Inc. v. Protective Life Ins. Co.,
    No. 03 Civ. 2820 (LAP), 2004 WL 633730 (S.D.N.Y. Mar. 30, 2004) ......................11

Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,
    271 F.3d 403 (2d Cir. 2001)...............................................................................7

Denney v. Jenkens & Gilchrist,
    412 F. Supp.2d 293 (S.D.N.Y. 2005)...........................................................8, 10

Fluor Daniel Intercontinental, Inc. v. General Elec. Co.,
    No. 98 Civ. 7181(WHP), 1999 WL 637236 (S.D.N.Y. Aug. 20, 1999).................8, 11

Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC,
    371 F. Supp.2d 571 (S.D.N.Y. 2005).........................................................8, 11

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,
    246 F.3d 219 (2d Cir. 2001)...............................................................................7

JLM Indus., Inc., et al. v. Stolt-Nielsen, SA,
    387 F.3d 163 (2d Cir. 2004)...............................................................................7

Norcom Electronics Corp. v. CIM USA Inc.,
    104 F.Supp.2d 198 (S.D.N.Y. 2000).................................................................12

Orange Chicken, L.L.C. v. Nambe Mills, Inc.,
    No. 00 Civ. 4730 (AGS), 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000)...............7, 13

Stechler v. Sidley Austin Brown & Wood LLP,
    382 F. Supp.2d 580 (S.D.N.Y. 2005).................................................................10

Terwilliger v. Terwilliger,
    206 F.3d 240 (2d Cir.2000)................................................................................9

Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.,
    933 F. Supp. 1170 (S.D.N.Y. 1996)..............................................................9, 10

## PRELIMINARY STATEMENT

Plaintiff Birmingham Associates, Ltd. ("Birmingham") signed a contract with Abbott Laboratories Vascular Enterprises Limited ("ALVE"), a subsidiary created by Defendant Abbott Laboratories ("Abbott"). The contract memorialized a joint venture for the funding of the potential development by ALVE and its affiliates, including Abbott, of a coronary stent product. The funding agreement contained a broad arbitration clause, which required that any dispute arising out of the agreement would be settled by binding arbitration.

Ignoring its agreement to arbitrate, Birmingham has instead instituted this litigation to resolve a dispute regarding Abbott's decision to terminate the development of the stent product contemplated by the funding agreement. In an effort to circumvent arbitration, Birmingham styles this litigation as one against Abbott – not ALVE – pursuant to a separate guarantee agreement between Abbott and ALVE to which Birmingham was not a party. This ploy should not be permitted. Clearly, this dispute relates directly to the terms of the funding agreement Birmingham signed with ALVE, which creates rights and obligations for Birmingham, ALVE and ALVE's affiliates, including Abbott. That funding agreement demands arbitration. Birmingham should be held to the deal that it struck, and this matter should be referred to arbitration.

Moreover, most, if not all, of the issues raised in this case are the subject of a currently-pending arbitration between Birmingham and ALVE, which Birmingham is seeking to resist. At the very least, this litigation should be stayed until the conclusion of the parallel arbitration, the outcome of which will likely, for all practical purposes, resolve this dispute.

## BACKGROUND

Abbott is a preeminent health care company with a broad-based product line that ranges from nutritional products and laboratory diagnostics to medical devices and pharmaceuticals. (Jan. 25, 2008 Steven T. Kipperman Decl. ("Kipperman Decl.") ¶ 2.)  Among the products that Abbott and its affiliates develop and manufacture are coronary stents, which are devices that are inserted into coronary arteries during angioplasty procedures to help open the arteries and improve blood flow. (Id.)  This litigation concerns the development of one of those stents:  the ZoMaxx™ Drug-Eluting Coronary Stent System (the "ZoMaxx Stent").

### The ZoMaxx Stent

The ZoMaxx Stent is what is referred to as a "drug eluting stent" or "DES." (Id. ¶ 3.)  The ZoMaxx Stent, like all drug eluting stents, consists of three parts:  (i) the stent body, which is a metal mesh tubular scaffold; (ii) a drug compound that is eluted from the stent; and (iii) a polymer that holds the drug compound onto the stent and controls the release of the drug over time. (Id.)  The drug compound is intended to inhibit the growth of scar tissue within the stented area, which can otherwise result in renewed blockage of the stented artery. (Id.)

As explained below, the ZoMaxx Stent development program was ultimately terminated based upon certain setbacks in the clinical trials and testing and Abbott's determination that continued development was not commercially reasonable.  That decision, in turn, led to this lawsuit and the related arbitration.

### The Funding Agreement

A group of investors (the "Investors"), including Birmingham, entered into a Research and Development Funding Agreement (the "Funding Agreement"), dated as of May 2, 2005, with ALVE relating to the development of the ZoMaxx Stent. (Id. ¶ 4 & Ex. A.)  ALVE is an indirect, wholly-owned subsidiary of Abbott organized under the laws of Ireland. (Jan. 29,

2

2008 Michelle Bonke Decl. ("Bonke Decl.") ¶ 2.)  It owns, among other things, the intellectual

property associated with the ZoMaxx Stent.  (Id.)  ALVE is essentially a holding company with

which Abbott and other related entities affiliate to develop and manufacture certain medical

devices.

Pursuant to the Funding Agreement, ALVE and its affiliates, including Abbott,

were to use "commercially reasonable efforts" to obtain regulatory approval of, among other

things, the ZoMaxx Stent and a contemplated successor product, referred to in the Funding

Agreement as the "Drug-Eluting Stent – 2nd Generation." (Kipperman Decl. ¶ 5.)  Under the

Funding Agreement, ALVE had the right to terminate any program covered by the agreement

"based upon its reasonable commercial judgment without giving consideration to its obligations

under this Agreement."  (Id., Ex. A § 10.3.)  In exchange for their investment in the development

program, the Investors were to receive royalty and milestone payments relating to the ZoMaxx

Stent and second generation stent if and when those products achieved certain regulatory

approvals and commercial benchmarks.  (Id. ¶ 5.)

Abbott negotiated the Funding Agreement with the Investors on behalf of ALVE.

Moreover, Abbott has certain powers and responsibilities under the Funding Agreement as an

"Affiliate" of ALVE.  (Id. ¶ 6.)  (The Funding Agreement defines "Affiliate" to include "any

corporation or other form of business organization, which directly or indirectly owns, controls, is

controlled by, or is under common control with … [a] party."  (Id., Ex. A § 1.1.))

For example, the Funding Agreement expressly provides that Abbott may be

responsible for the conduct and funding of the development program.  (Id. ¶ 6, Ex. A §§ 2.1 &

3.)  And Abbott did, in fact, take responsibility for developing the ZoMaxx Stent.  (Id. ¶ 6.)  In

addition, Abbott – not ALVE – would (i) regularly report to the Investors on the progress of the

3

1427147v.2

development program and (ii) coordinate the payment of any royalties that the Investors were entitled to under the Funding Agreement. (Id.) Moreover, in recognition of the close relationship between Abbott and ALVE – and of Abbott's interest in the Funding Agreement – the Funding Agreement provides that all notices to ALVE under the Funding Agreement shall also be provided to Abbott as well. (Id., Ex. A § 15.1.)

Of particular significance to this motion, the Funding Agreement also contains a broad arbitration clause:

> The Parties recognize that bona fide disputes may arise which relate to the Parties' rights and obligations under [the Funding Agreement]. The Parties agree that any such dispute shall be resolved by Alternative Dispute Resolution ("ADR") in according with the procedures set forth in Exhibit 15.6. ...

(Id., Ex. A § 15.6.) The only exception to the arbitration clause is for an action for injunctive relief to compel the other party to comply with the confidentiality obligations of the Funding Agreement. (Id.)

**The Keep Well Agreement**

Simultaneous with the execution of the Funding Agreement (i.e., May 2, 2005), Abbott entered into a "Keep Well Agreement" with ALVE (the "Keep Well Agreement"). (Id. ¶ 7.) As the name implies, the Keep Well Agreement essentially obligated Abbott to guarantee ALVE's performance under the Funding Agreement. Among other things, it provided that Abbott would provide sufficient equity capital to ALVE so that ALVE could "meet its obligations to its creditors and to the Investors." (Id. ¶ 8.) It also provided that "Abbott will use Commercially Reasonable Efforts to further the commercial interests and success of ALVE, including providing research and development, clinical trial and sales and marketing support for cardiovascular and endovascular medical device products produced by ALVE...." (Id.) The Investors are identified as intended beneficiaries of the Keep Well Agreement. (Id., Ex. B § 8.)

4

The relationship between the Keep Well Agreement and the Funding Agreement is obvious. The Keep Well Agreement repeatedly refers to, and incorporates provisions of, the Funding Agreement. (Id., Ex. B ¶ C.) Moreover, the purpose of the Keep Well Agreement is apparent on its face. "The Investors, as a condition to their willingness to contribute the additional funding, require assurances that Abbott will take all such action as may be necessary to assure that ALVE will be able to comply with all of its obligations, including its obligations to make payments to the Investors pursuant to the Funding Agreement." (Id., Ex. B ¶ D.) In short, ALVE was an intellectual property holding company and commercial development under the Funding Agreement would come from Abbott – as these agreements make clear.

**Termination of the ZoMaxx Stent Development Program**

The ZoMaxx Stent went through a rigorous research and development process, including several in-depth clinical trials. (Id., ¶ 9.) Based in part upon its assessment of this clinical data, Abbott ultimately determined in October 2006 that it would no longer pursue the commercial development of the ZoMaxx Stent. (Id.)

**Filing of this Litigation and Related Arbitration**

On December 17, 2007, Birmingham filed its complaint against Abbott in this action. In short, Birmingham alleged that Abbott abandoned the ZoMaxx Stent not because of inherent problems with the product, but instead because it wished to focus its development efforts on another Abbott product, the "Xience" stent. (Jan. 28, 2008 Declaration of William F. Cavanaugh, Jr. ("Cavanaugh Decl."), Ex. A ¶¶ 47-48.) Upon receipt of the lawsuit, Abbott's counsel wrote to Birmingham's counsel on January 3, 2008, demanding that the litigation be stayed or dismissed in favor of arbitration. (Id., Ex. B.) In a letter dated January 4, 2008, Birmingham's counsel denied that request and this motion practice followed. (Id., Ex. C.)

5

Also on January 3, ALVE gave notice to Birmingham of its desire to resolve the dispute regarding the issues raised in this lawsuit pursuant to the ADR provisions of the Funding Agreement. (Id., Ex. D.) Under the ADR procedures outlined in the Funding Agreement, ALVE's notice triggered a 28-day period for good faith negotiations.

Counsel for Birmingham responded on January 4 to ALVE's notice of dispute by claiming that the notice was deficient insofar as it did not identify the nature of the dispute with adequate specificity and that the issues raised in this litigation were not, in fact, arbitrable. (Id., Ex. E.) At the same time, however, Birmingham provided its own notice of a dispute under the ADR provisions of the Funding Agreement relating to ALVE's failure to make royalty and milestone payments to which Birmingham claims it is entitled. (Id., Ex. F.) Specifically, Birmingham alleges that the Xience stent constitutes the Drug Eluting Stent – 2nd Generation under the Funding Agreement.

ALVE, in turn, responded to Birmingham's arbitration demand on January 15, 2008. In that letter, ALVE disputed Birmingham's allegations, but agreed that the dispute regarding the Xience stent should be resolved pursuant to the ADR provisions of the Funding Agreement. (Id., Ex. G.) ALVE also provided additional specificity regarding the nature of its dispute against Birmingham relating to the ZoMaxx Stent: namely, that ALVE sought through ADR a determination that neither ALVE, nor its affiliates, including Abbott, violated any duty to Birmingham under the Funding Agreement by the termination of the ZoMaxx development program. (Id.) In a letter dated January 18, 2008, Birmingham's counsel responded to ALVE's more specific demand by persisting in its view that the dispute regarding the ZoMaxx Stent was not arbitrable. (Id., Ex. H.)

6

**ARGUMENT**

The relationships between the parties, and between the Funding Agreement and the Keep Well Agreement, confirm that the dispute between Abbott and Birmingham should be resolved through arbitration.

**I.    THE DISPUTE BETWEEN ABBOTT AND BIRMINGHAM SHOULD BE ARBITRATED AND THIS LITIGATION SHOULD BE DISMISSED.**

Consistent with the "strong federal policy favoring arbitration as an alternative means of dispute resolution," Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001), the Second Circuit has recognized that a non-signatory to an arbitration agreement, such as Abbott in this case, may compel arbitration of claims brought by a signatory to the agreement, such as Birmingham. In particular, the Second Circuit has "recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" JLM Indus., Inc., et al. v. Stolt-Nielsen, SA, 387 F.3d 163, 178 (2d Cir. 2004) (quoting Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001)). A careful consideration of these issues in this case compels the conclusion that this dispute should be arbitrated.

First, Abbott's close corporate relationship with ALVE supports compelling arbitration. In particular, Abbott is an "Affiliate" of ALVE under the Funding Agreement. "[C]ourts of this Circuit have compelled a signatory to arbitrate claims brought by a nonsignatory ... [where the nonsignatory] was engaged in a corporate relationship with the other signatory." Orange Chicken, L.L.C. v. Nambe Mills, Inc., No. 00 Civ. 4730 (AGS), 2000 WL

7

1858556, *5 (S.D.N.Y. Dec. 19, 2000). Abbott and ALVE's parent-subsidiary relationship

satisfies this criteria. See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 371

F. Supp.2d 571 (S.D.N.Y. 2005) (dismissing plaintiff's securities fraud action in favor of

arbitration with a non-signatory parent pursuant to an arbitration clause in the partnership

agreement between plaintiff and investment advisor, which was 99% owned by parent); Fluor

Daniel Intercontinental, Inc. v. General Elec. Co., No. 98 Civ. 7181(WHP), 1999 WL 637236, *6

(S.D.N.Y. Aug. 20, 1999) (granting motion to compel arbitration under an estoppel theory where

a non-signatory defendant owned fifty percent of entity that was signatory to an agreement with

plaintiff that contained an arbitration clause).

       Second, the issues raised in this litigation are clearly "intertwined" with the

Funding Agreement.   "Claims are intertwined 'where the merits of an issue between the parties

[are] bound up with a contract binding one party and containing an arbitration clause.'" Denney

v. Jenkens & Gilchrist, 412 F. Supp.2d 293, 298 (S.D.N.Y. 2005) (Scheindlin, J.). This Court

has explained the broad range of cases in which courts have compelled arbitration based upon

the relationship between the facts of the case and an arbitrable contract:

> Courts have found claims to be intertwined where the nonsignatory
> had no obligations under the agreement containing the arbitration
> clause, where the intertwined claims did not require interpretation
> of the agreement, where the signatory's claims did not exclusively
> rely on the agreement, and where the intertwined claims may not
> have been meritorious.  At a minimum, the signatory's claims must
> "make reference to or presume[] the existence of the written
> agreement."

Id. Although Birmingham attempts to couch its complaint as relating only to Abbott's

obligations under the Keep Well Agreement, that Keep Well Agreement is subordinate to the

Funding Agreement. The Funding Agreement governs the ZoMaxx Stent development program

and the royalty and other payments to which the Investors are entitled. Indeed, it is the only

agreement relating to the ZoMaxx Stent that Birmingham actually signed. The Keep Well Agreement is simply Abbott's guaranty that ALVE and its Affiliates, including Abbott, will perform.

The Keep Well Agreement only becomes relevant if and when ALVE fails to fulfill its obligations under the Funding Agreement. Put differently, if ALVE fulfills its obligations in the development program and payments to Investors, including Birmingham, then the Keep Well Agreement is academic. Thus, Birmingham's claims regarding the decision to stop the commercial development of the ZoMaxx Stent depend in the first instance upon whether "ALVE or its Affiliates ... [used] Commercially Reasonable Efforts to conduct the Development Program in good scientific manner and using good laboratory, manufacturing, and clinical practices, to achieve the objectives of the Development Program efficiently and expeditiously and to comply with all applicable laws and regulations." (Kipperman Decl., Ex. A § 2.1.)

Abbott's duties to ALVE under the Keep Well Agreement would only be triggered if ALVE and its Affiliates – including Abbott – failed to use "Commercially Reasonable Efforts" to develop the ZoMaxx Stent. ALVE's and Abbott's responsibilities and conduct under the Funding Agreement, therefore, will be critical to deciding the claims asserted by Birmingham in this litigation.[1]

This Court's decision in Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., 933 F. Supp. 1170 (S.D.N.Y. 1996) (Scheindlin, J.), is instructive. In that case, the plaintiff entered into a contract with the defendant's affiliate to sell sugar. Although the affiliate

---

[1]    Similarly, Birmingham can only assert its breach of contract claim against Abbott if Birmingham fulfilled all of its own obligations under the Funding Agreement. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir.2000) (noting that under New York law, a plaintiff in a breach of contract action must establish, *inter alia*, that it performed its obligations under the contract). Put simply, Birmingham's claims against Abbott in this litigation cannot be decided absent an analysis of the Funding Agreement.

1427147v.2

was the signatory to the agreement, the defendant was heavily involved in the negotiation of the contract. Id. at 1173. The contract provided that disputes regarding the agreement would be settled through arbitration. Id. The plaintiff sued the defendant arguing that the defendant had conspired with the signatory affiliate to defraud plaintiff. This Court granted the defendant's motion to compel arbitration under an estoppel theory, noting that the defendant had negotiated the relevant contract with plaintiff and that there was an "integral link between the fraud claim [asserted in the Litigation] and the underlying contractual obligations...." Id. at 1179.

The same result should follow in this case. Abbott was directly involved in negotiating the Funding Agreement with the Investors and in the ZoMaxx Stent development program under the Funding Agreement. Moreover, Birmingham's claims against Abbott under the Keep Well Agreement depend upon an analysis of Birmingham's, Abbott's and ALVE's performance under the Funding Agreement.

Similarly instructive is this Court's decision in Denney v. Jenkens & Gilchrist, 412 F.Supp.2d 293, 299 (S.D.N.Y. 2005) (Scheindlin, J.). In that case, this Court denied a non-signatory defendant's motion to compel arbitration under an estoppel theory. Denney is illuminating for the contrast that it presents to this case. This Court denied the motion to compel arbitration based upon the fact that "[p]laintiffs could allege the same causes of action against [the non-signatory defendant] were the [agreements with the arbitration clause] void." Id. at 299. Here, however, Birmingham's claims under the Keep Well Agreement depend entirely on the Funding Agreement. Without the Funding Agreement, Birmingham has no interest in the development of the ZoMaxx Stent and no alleged grievance under the Keep Well Agreement.[2]

---

[2]     This Court's decision in Stechler v. Sidley Austin Brown & Wood LLP, 382 F. Supp.2d 580 (S.D.N.Y. 2005), is similarly distinguishable from this case. There, defendant law firm Brown & Wood sought to compel arbitration based upon an arbitration provision of a contract between its clients and the plaintiff. It was "unrefuted" that Brown &

Moreover, without the Funding Agreement, Birmingham has no right to pursue the arbitration it is attempting to initiate.

Birmingham should not be permitted to rely upon the Funding Agreement to the extent that it affords Birmingham certain rights as an Investor in the ZoMaxx Stent development program, and then ignore that same agreement in this litigation to the extent that it demands arbitration of disputes arising out of that relationship. See Fluor Daniel, 1999 WL 637236, *7 ("[Plaintiffs] cannot have it both ways. They cannot rely on the contract when it works to their advantage by enforcing the obligations of the ... defendants, but then repudiate the contract and its arbitration clause when they believe it works against them.") This matter should be arbitrated, and this litigation should be dismissed. See Fraternity Fund, 371 F. Supp.2d at 572 (granting motion to dismiss litigation that was subject to arbitration); Better Benefits, Inc. v. Protective Life Ins. Co., No. 03 Civ. 2820 (LAP), 2004 WL 633730, at *5 (S.D.N.Y. Mar. 30, 2004) (same).

## II. THIS LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION BETWEEN ALVE AND BIRMINGHAM.

Under any circumstance, this litigation should be stayed pending resolution of the currently-pending ADR proceeding between ALVE and Birmingham. There is indisputably an ADR proceeding between ALVE and Birmingham regarding whether Birmingham is entitled to any royalties or milestone payments relating to the Xience stent. (Birmingham argues – and ALVE disputes – that the Xience stent is the Drug-Eluting Stent – 2nd Generation under the Funding Agreement.) ALVE has separately provided notice of its own dispute with Birmingham regarding the subject matter of this litigation: i.e., whether ALVE or any of its Affiliates (as that

---

Wood was acting independently of the signatories to the contract. Here, by contrast, Abbott was intimately involved in ALVE's development of the ZoMaxx Stent under the Funding Agreement and was an "Affiliate" of ALVE under the Funding Agreement.

1427147v.2

term is defined in the Funding Agreement) – including Abbott – violated any duties to Birmingham based upon the decision to terminate the commercialization of the ZoMaxx Stent.

Birmingham is now apparently attempting to challenge whether this dispute over the termination of the ZoMaxx Stent can be resolved through ADR. The terms of the Funding Agreement clearly require arbitration of ALVE's contention that neither ALVE nor any of its affiliates is in breach of the Funding Agreement. (Kipperman Decl., Ex. A Ex. 15.6 ("To begin an ADR proceeding, a Party shall provide written notice to the other Party of the issues to be resolved by ADR. Within fourteen (14) days after its receipt of such notice, the other Party may, by written notice to the Party initiating the ADR, add additional issues to be resolved within the same ADR.") To address Birmingham's tactic, ALVE has separately moved to intervene in this action for the purpose of compelling arbitration of the ZoMaxx dispute.

Courts routinely stay litigation where, as here, a pending arbitration may resolve the dispute at issue in the litigation. For example, in Norcom Electronics Corp. v. CIM USA Inc., 104 F.Supp.2d 198 (S.D.N.Y. 2000), the Court stayed litigation regarding one non-arbitrable claim until the resolution of the parties' remaining disputes through arbitration. The Court did so based upon the "'power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Id. at 206 (citations and quotations omitted). The criteria for granting a stay pending arbitration are straightforward:

> The movant for a stay must first establish that "there are issues common to the arbitration and the courts, and that those issues will finally be determined by arbitration." If this test is met, the moving party has the burden of showing that it will not hinder the arbitration, that the arbitration will be resolved within a reasonable time, and that such delay that may occur will not cause undue hardship to the non-moving party. Stays are also particularly

1427147v.2

> appropriate where they "promote judicial economy, avoidance of
> confusion and possible inconsistent results."

Orange Chicken, L.L.C. v. Nambe Mills, Inc., No. 00 Civ. 4730(AGS), 2000 WL 1858556, at *9

(S.D.N.Y. Dec. 19, 2000) (citations and quotations omitted).  In Orange Chicken, the Court

denied the non-signatory defendant's motion to compel arbitration, but granted a stay of the

litigation because a pending arbitration between two other parties "will likely provide significant

insight into, if not actually resolve, the claims asserted in this action."  Id.

　　　　The same factors favor a stay of this litigation.  First, the resolution of the

ALVE/Birmingham arbitration will likely resolve, for all practical purposes, the dispute in this

litigation.  If the arbitrator determines that ALVE (and its Affiliate Abbott) violated no duty to

Birmingham, and that the termination of the ZoMaxx Stent development program was

commercially reasonable under the Funding Agreement, then Abbott necessarily did not violate

the Keep Well Agreement.  If, on the other hand, the arbitrator rules against ALVE, then

Birmingham may be able to obtain its recovery.  In addition, the ADR dispute initiated by

Birmingham against ALVE regarding whether the Xience stent is the Drug Eluting Stent – 2nd

Generation under the Funding Agreement may also bear on the issues in this litigation.

Specifically, Birmingham's claim that it was harmed by Abbott's decision to forego the ZoMaxx

Stent in favor of the Xience stent is undermined by its alternative claim in the ADR proceeding

that it is entitled to royalties and milestone payments relating to the development of the Xience

stent.  Thus, staying this litigation in favor of the pending arbitration will help preserve judicial

resources, and avoid the potential for inconsistent results.

　　　　Second, the ALVE/Birmingham arbitration will be resolved promptly.  The ADR

procedures set forth in the Funding Agreement provide that the arbitration must be resolved

13

within, at most, four months after the service of the initial ADR notice. (Kipperman Decl., Ex. A

Ex. 15.6.)

## **CONCLUSION**

For the foregoing reasons, Abbott respectfully requests that this Court compel

arbitration of the dispute between Abbott and Birmingham and dismiss this litigation, or, in the

alternative, stay this litigation pending resolution of the dispute between ALVE and Birmingham

through arbitration.

Dated:  January 29, 2008
        New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By: _William  F. Cavanaugh Jr. /@_
    William F. Cavanaugh, Jr. (WC-3474)
    Nicolas Commandeur (NC-4280)

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendant Abbott Laboratories*

14