UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIRMINGHAM ASSOCIATES LTD,

                Plaintiff,

      — against —

ABBOTT LABORATORIES,

                Defendant.

07 Civ. 11332 (SAS)

---

## AFFIRMATION OF GEORGE K. FOSTER

I, George K. Foster, declare pursuant to 28 U.S.C. section 1746 as follows:

1.      I am an attorney duly admitted to practice before this Court and am counsel with Dechert LLP, attorneys of record for plaintiff Birmingham Associated Ltd. ("Plaintiff").

2.      I respectfully submit this affirmation in opposition to the Motion by defendant Abbott Laboratories ("Abbott") to Compel Arbitration and to Dismiss or Stay this Litigation; in opposition to the Motion Abbott Laboratories Vascular Enterprises, Inc. ("ALVE") to Intervene and Compel Arbitration; and in support of Plaintiff's Cross-Motion for an Order Enjoining ADR, in order to place before the Court certain documents referenced in the accompanying memoranda of law in opposition to the above-referened motions and in support of the above-referenced cross-motion.

3.      Attached hereto as Exhibit A is a true and correct copy of signature pages of an agreement entitled "Research and Development Funding Agreement by and among Abbott

Laboratories Vascular Enterprises Limited and The Investors Listed on Annex A Hereto" dated June 6, 2005.

    4.     Attached hereto as Exhibit B is a true and correct copy of excerpts of the Report and Financial Statements of ALVE for the year ended November 30, 2005 (*available at* http://www.cro.ie/search/submissionse.asp?number= 367331&BI=C).

    5.     Attached hereto as Exhibit C is a true and correct copy of an Abbott press release dated October 3, 2006 (*available at* http://www.abbott.com/global/url/pressRelease/en_US/60.5:5/Press_Release_0362.htm).

    6.     Attached hereto as Exhibit D is a true and correct copy of a letter from Abbott Laboratories to a Birmingham affiliate, Elliott Associates, Ltd. ("Elliott Associates") dated October 20, 2006.

    7.     Attached hereto as Exhibit E is a true and correct copy of an e-mail exchange between Jesse Cohn of Elliott Associates and Steven T. Kipperman of Abbott dated October 26, 2006.

    8.     Attached hereto as Exhibit F is a true and correct copy of a "Request for ADR Proceeding" served on counsel for Birmingham by counsel for ALVE on February 11, 2008.

    I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct. Executed on February 19, 2008, at New York, New York.

George K. Foster

# EXHIBIT A

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

ABBOTT LABORATORIES VASCULAR ENTERPRISES LIMITED

By: _____

Name: Thomas C. Freyman

Title: Managing Director

Date: June 4, 2005


BIRMINGHAM ASSOCIATES LTD.

By: _____

Name: Elliot Greenberg

Title: Vice President

Date: June ___, 2005

INVESTOR'S NOTICE ADDRESS:

with a copy to:

Elliott Associates                          Elliott Associates
712 Fifth Avenue, 35th Floor                712 Fifth Avenue, 35th Floor
New York, New York 10019                    New York, New York 10019
Attention: Jesse Cohn                       Attention: Elliot Greenberg

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

ABBOTT LABORATORIES VASCULAR ENTERPRISES LIMITED

By: _____

Name: Thomas C. Freyman

Title: Managing Director

Date: June ___, 2005

BIRMINGHAM ASSOCIATES LTD.

By: _____

Name: Elliot Greenberg

Title: Vice President

Date: June 7, 2005

INVESTOR'S NOTICE ADDRESS:

with a copy to:

Elliott Associates
712 Fifth Avenue, 35th Floor
New York, New York 10019
Attention: Jesse Cohn

Elliott Associates
712 Fifth Avenue, 35th Floor
New York, New York 10019
Attention: Elliot Greenberg

# EXHIBIT B

REPORT AND FINANCIAL STATEMENTS

ABBOTT LABORATORIES VASCULAR
ENTERPRISES LIMITED

FOR THE YEAR ENDED 30 NOVEMBER 2005

# ABBOTT LABORATORIES VASCULAR ENTERPRISES LIMITED

## REPORTS AND FINANCIAL STATEMENTS
## FOR THE YEAR ENDED 30 NOVEMBER 2005

## CONTENTS

|  | PAGE |
|---|---|
| DIRECTORS AND OTHER INFORMATION | 2 |
| DIRECTORS' REPORT | 3 - 4 |
| STATEMENT OF DIRECTORS' RESPONSIBILITIES | 5 |
| INDEPENDENT AUDITORS' REPORT | 6 - 7 |
| STATEMENT OF ACCOUNTING POLICIES | 8 |
| PROFIT AND LOSS ACCOUNT | 9 |
| STATEMENT OF TOTAL RECOGNISED GAINS AND LOSSES | 10 |
| BALANCE SHEET | 11 |
| NOTES TO THE FINANCIAL STATEMENTS | 12 - 17 |

# ABBOTT LABORATORIES VASCULAR ENTERPRISES LIMITED

## DIRECTORS' REPORT

The directors present their report and the audited financial statements for the year ended 30 November 2005.

## PRINCIPAL ACTIVITY, BUSINESS REVIEW AND FUTURE DEVELOPMENTS

The principal activities of the company are that of the distribution of medical and related products, investment holding and undertaking research and development.

The directors anticipate the company's trading position will improve in the future.

## RESULTS FOR THE YEAR AND STATE OF AFFAIRS AT 30 NOVEMBER 2005

The profit and loss account and balance sheet of the company are set out on pages 9 and 11 respectively.

## DIVIDENDS

The directors do not recommend the payment of a dividend in respect of the year ended 30 November 2005 (2004: €Nil).

## DIRECTORS

The current directors are listed on page 2. There were no changes in directors during the year.

## DIRECTORS' AND SECRETARY'S INTERESTS

According to the register of directors and secretaries neither of the directors nor the company secretary at 30 November 2005 have any beneficial interest in the share capital of Abbott Laboratories Vascular Enterprises Limited or in any parent or group companies at the start and end of the year.

## RESEARCH AND DEVELOPMENT

Research and development revenue, net of expenses, of €7,212,000 (2004: expenditure of €6,433,000) was recorded in the profit and loss account as incurred during the year.

## SUBSIDIARIES AND BRANCH

Details of the company's subsidiaries are set out in note 7.

The company has a branch in Switzerland whose results, assets and liabilities are included in the company's audited financial statements.

ABBOTT LABORATORIES VASCULAR ENTERPRISES LIMITED

NOTES TO THE FINANCIAL STATEMENTS
FOR THE YEAR ENDED 30 NOVEMBER 2005 (CONTINUED)

19.    EMPLOYEES AND REMUNERATION

The average number of persons employed during the financial year was 163 and is analysed into the following categories:

|  | Year ended 30/11/2005 No. | Year ended 30/11/2004 No. |
|---|---|---|
| Production | 97 | 80 |
| Research and development | 18 | 24 |
| Administration | 48 | 44 |
|  | 163 | 148 |

The company's employment costs for all employees, including executive directors comprises:

|  | € €'000 | € €'000 |
|---|---|---|
| Wages and salaries | 7,294 | 7,242 |
| Social welfare costs | 415 | 517 |
| Pension costs | 343 | 357 |
|  | 8,052 | 8,116 |

20.    RESEARCH AND DEVELOPMENT FUNDING

On 2 May 2005, the Company ("ALVE") entered into a Research and Development ("R&D") funding agreement with certain investors. In accordance with the agreement, ALVE received €145,000,000 to support R&D and clinical activities of certain products which were under development. The agreement calls for ALVE to pay the investors set payments at developmental milestones and royalties on sales of the products included in the agreement. The funds were recorded as deferred revenue to be recognised as earned under the terms of the agreement. During the year, one product development programme was cancelled, resulting in ALVE refunding €3,700,000 to the investors. At 30 November 2005, €18,700,000 has been recognised as income on the accompanying profit and loss account, while €54,639,000 and €68,039,000 is recorded as short term and long term liabilities, respectively, in the balance sheet.

21.    SUBSEQUENT EVENTS

During 2006, the company received an additional capital contribution from its parent in the amount of €34,000,000. The company subsequently passed that consideration onto a subsidiary, resulting in an increase to investments in affiliates of €34,000,000.

# EXHIBIT C



Print This Page | Back to Web Page

# Press Release

**Abbott Begins Early International Launch of XIENCE™ Everolimus Eluting Coronary Stent System**

### Company Expects to Achieve a Leadership Position in Drug-Eluting Stent Market with XIENCE V

Abbott Park, Illinois, October 3, 2006 — Abbott today announced that it has begun the international launch of the XIENCE™ V Everolimus Eluting Coronary Stent System for the treatment of coronary artery disease earlier than the company's original projections. The XIENCE V stent system will be launched in the majority of European countries immediately. The company also announced that it will focus its commercial, manufacturing and clinical resources on the successful launch of XIENCE V and will not pursue commercialization of its ZoMaxx™ Drug-Eluting Coronary Stent System.

"The positive, differentiating clinical results that XIENCE V demonstrated in SPIRIT II, combined with positive physician feedback about XIENCE V, indicates that XIENCE has significant potential to meet critical next-generation drug-eluting stent needs for physicians and patients," said John M. Capek, Ph.D., president, Cardiac Therapies, Abbott Vascular.

Positive clinical results for XIENCE V from the SPIRIT II trial announced at the World Congress of Cardiology on September 5, 2006, demonstrated that XIENCE V showed statistically significant superiority to the TAXUS® paclitaxel-eluting coronary stent system with respect to the study's primary endpoint, which was angiographic in-stent late loss at six months. Twelve-month results from SPIRIT II and nine-month results from SPIRIT III will be presented in the first half of 2007. The XIENCE V stent system has received CE Mark and is currently an investigational device in the United States and Japan.

"The XIENCE V drug-eluting stent system offers an excellent combination of technologies to deliver an advanced treatment for patients with coronary artery disease," said Eulogio Garcia Fernandez, M.D., Gregorio Marañón University General Hospital, Madrid, Spain. "Its highly deliverable MULTI-LINK VISION® coronary stent platform, the biocompatible coating and the anti-proliferative, anti-inflammatory, everolimus, plus encouraging clinical results, suggest that XIENCE V will become a preferred treatment of choice for coronary artery disease in Europe."

## Focus on XIENCE V

After analyzing the clinical data from both the XIENCE V and ZoMaxx programs, Abbott has determined that it will not pursue commercialization of ZoMaxx, and will instead focus its commercial, manufacturing and clinical resources on XIENCE V. Nine-month clinical data from ZOMAXX I, Abbott's international ZoMaxx trial, will be presented at the Transcatheter Cardiovascular Therapeutics (TCT) meeting in Washington D.C. on October 23, 2006.

"We have conducted a thorough analysis of all available clinical data for both XIENCE V and ZoMaxx, and have concluded that XIENCE V is a significantly better product," said Richard A. Gonzalez, president and chief operating officer, Abbott. "Following encouraging physician feedback from our pre-launch evaluation program in Europe, and given the positive XIENCE V data, we remain confident in our ability to achieve a leadership position in the drug-eluting stent market with the XIENCE V platform."

Abbott recently announced that it is expanding its drug-eluting stent manufacturing capacity in Ireland to prepare for future launches in the U.S. and Japan.

"Abbott is pleased to offer XIENCE V as a new treatment option to European physicians for patients with coronary artery disease, which remains a leading cause of death around the world," Capek said. "As a leader in vascular care, Abbott will continue to deliver on its commitment to provide innovative technologies to advance the treatment of vascular disease."

## SPIRIT V Clinical Trial

Abbott also announced it will initiate SPIRIT V, an international study that will provide additional clinical experience with the XIENCE V stent system in approximately 3,000 patients at approximately 100 sites throughout Europe, Asia, Canada and Latin America. The trial consists of two concurrent studies, the Diabetic Study and a Registry. The SPIRIT V Diabetic Study is a prospective, randomized, single-blind study comparing the XIENCE V stent system to the TAXUS® Liberté™ stent system in the treatment of diabetic patients with coronary artery lesions who will fulfill the eligibility criteria. The SPIRIT V Registry is a prospective, single-arm, registry evaluating performance of the XIENCE V stent system in real-world clinical settings.

**About the SPIRIT Family of Trials**

The SPIRIT FIRST study of the XIENCE V Stent System showed positive results through two years with no MACE events between one and two years in patients with *de novo* native coronary artery lesions. SPIRIT II and SPIRIT III are large-scale pivotal clinical trials comparing XIENCE V to the TAXUS paclitaxel eluting coronary stent system. SPIRIT IV, which already has more than 100 patients enrolled, will evaluate the safety and efficacy of the XIENCE V Stent System for the treatment of coronary artery disease in a more complex patient population in the United States.

**About Abbott Vascular**

Abbott Vascular, a division of Abbott, is one of the world's leading vascular care businesses. Abbott Vascular is uniquely focused on advancing the treatment of vascular disease and improving patient care by combining the latest medical device innovations with world-class pharmaceuticals, investing in research and development, and advancing medicine through training and education. Headquartered in Northern California, Abbott Vascular offers a comprehensive portfolio of vessel closure, endovascular and coronary products that are recognized internationally for their safety, effectiveness and ease of use in treating patients with vascular disease.

**About Abbott**

Abbott is a global, broad-based health care company devoted to the discovery, development, manufacture and marketing of pharmaceuticals and medical products, including nutritionals, devices and diagnostics. The company employs 65,000 people and markets its products in more than 130 countries.

Contact:

Media:
Melissa Brotz          (847) 935-3456
Kelly Morrison        (847) 937-3802

Financial Community:
John Thomas           (847) 938-2655

⊞ top of page

Copyright © 2006, 2008 Abbott Laboratories. Abbott Park, Illinois, U.S.A.

Unless otherwise specified, all product names appearing in this Internet site are trademarks owned by or licensed to Abbott Laboratories, its subsidiaries or affiliates. No use of any Abbott trademark, trade name, or trade dress in this site may be made without the prior written authorization of Abbott Laboratories, except to identify the product or services of the company.

# EXHIBIT D



Steven T. Kipperman
Director, Licensing and New Business Development
c/o Abbott
100 Abbott Park Road
Dept. 3MDB, Bldg AP6B
Abbott Park, IL 60064

t 847.937.4016
f 847.935.8733

October 20, 2006

Jesse Cohn, Chuck MacDonald and Elliott Greenberg
c/o Elliott Associates
712 Fifth Avenue
35th Floor
New York, NY 10019

Re:    Research and Development Funding Agreement by and among Abbott
Laboratories Vascular Enterprises Limited and the Investors dated as of May 2, 2005
("Agreement")

Dear All:

The data from the ZoMaxx I, A Prospective, Multicenter, Randomized Trial of
Zotarolimus and Paclitaxel-Eluting Stents in Patients With Coronary Artery Disease:
Nine-Month Clinical and Angiographic Results will be presented by Dr. Bernard R.
Chevalier at the Transcatheter Cardiovascular Therapeutics (TCT) industry conference
in Washington, D.C. on October 23, 2006.  Based in part upon its assessment of this
ZoMaxx I clinical data, Abbott has concluded that it will discontinue its program to
commercialize the ZoMaxx drug-eluting stent.  In light of this information, Abbott is
also assessing the 2nd Generation Drug Eluting Stent program and will communicate
its plan in the near future.

In accordance with Section 10.3 of the Agreement, the unspent Development Funding
allocated to the Drug Eluting Stent - ZoMaxx program, which is Fourteen Million Two
Hundred six Thousand Four Hundred Twenty-nine dollars ($14,206,429.00) plus the
accrued interest for this program, shall be refunded within the next 25 days.  The
accrued interest will be calculated up to the time of disbursement of the funds and the
detail of the calculation of the prorated disbursement shall be forwarded to each
Investor on or before the date the funds are disbursed.  Capitalized terms used in this
letter have the meanings ascribed to them in the Agreement.

**Action required by Investors:**  In order to disburse the funds, please forward
your wire transfer instructions including Bank Name, Swift Code, ABA number,
Account number, Contact Person's Name.  The wire transfer information is to be sent
to my attention via email (email Address: steve.kipperman@abbott.com) or to the
address above.

If you should have any questions, please feel free to contact me.

Best regards,

Steve Kipperman /sk

Abbott
A Promise for Life

# EXHIBIT E

**From:** Jesse Cohn [JCohn@elliottmgmt.com]
**Sent:** October 26, 2006 4:24 PM
**To:** Steve T Kipperman
**Subject:** RE: Wire Instructions for ZoMaxx refund of Unspent Funds

Steve-

This email is in response to yours of October 20 and October 26.

The wire transfer instructions for Elliott are as follows:

ELLIOTT INTERNATIONAL , L.P.
Chase Manhattan Bank
ABA 021000021
Merrill Lynch PF&S
Acct #: 930-4-019012
Further credit: Elliott International, LP
Acct# 329-89273
Contact : Danny Hui 212-670-1974

In providing these wire transfer instructions and accepting the funds you will be wiring to us, Elliott is not waiving any of its rights under the Research and Development Funding Agreement by and among Abbott Laboratories Vascular Enterprises Limited and the Investors dated as of May 2, 2005, all of which are expressly reserved.

Regards,

Jesse

Jesse A. Cohn
Elliott Associates
(o) 212.506.2999
(c) 917.499.3922
jcohn@elliottmgmt.com

---

**From:** Steve T Kipperman [mailto:Steve.Kipperman@abbott.com]
**Sent:** Thursday, October 26, 2006 3:15 PM
**To:** Jesse Cohn
**Cc:** Steve T Kipperman
**Subject:** Wire Instructions for ZoMaxx refund of Unspent Funds
**Importance:** High

Just wanted to follow up as I have not heard back from you regarding your wire transfer instructions so that we can wire out the Unspent Funds plus accrued interest from the ZoMaxx program. We are targeting Nov. 3rd for the payment, but I need everyone's wire instructions in order to get the disbursement request circulating for the appropriate approvals.

Please let me know as soon as possible so we are able to meet the targeted Nov. 3rd timing.

Any questions, please let me know.

10/27/06

# EXHIBIT F

# ABBOTT LABORATORIES VASCULAR ENTERPRISES, INC.,

## Claimant,

vs.

# BIRMINGHAM ASSOCIATES, LTD.

## Respondent.

## REQUEST FOR ADR PROCEEDING

Pursuant to the May 2, 2005 Research and Development Funding Agreement (the "Funding Agreement"), Claimant hereby submits this Request for ADR Proceeding, as follows:

## Introduction

1.      Claimant Abbott Laboratories Vascular Enterprises, Inc. ("ALVE") entered into the Funding Agreement with a number of sophisticated investors (the "Investors"), including Respondent Birmingham Associates, Ltd., ("Birmingham"), the purpose of which was the research and development of a number of vascular programs, including, among other things, certain drug eluting coronary stent products. ALVE and its affiliates were entirely responsible for the development of the stents under the Funding Agreement. Recognizing ALVE and its affiliates' expertise in the industry, the Agreement provided that they enjoyed discretion to decide whether continued development of any of the stent products utilizing Funding Agreement monies was no longer commercially reasonable.

2.      In exchange for their investment, the Investors, including Birmingham, were entitled to royalty and milestone payments if and when the stent products at issue achieved certain regulatory approvals and sales benchmarks. One of the stents that was covered by the Funding Agreement was the ZoMaxx™ Drug-Eluting Coronary Stent System (the "ZoMaxx

1430182v.5

Stent"). Another stent product covered by the Funding Agreement was an in-development stent, referred to in the Funding Agreement as the Drug Eluting Stent – 2nd Generation (the "Second Generation Stent"). The ZoMaxx Stent and the Second Generation Stent are the subject of this dispute. Specifically, ALVE seeks a determination through an ADR proceeding that it and its affiliates, including Abbott Laboratories ("Abbott"), acted appropriately under the Funding Agreement with respect to: (i) the decision to no longer pursue the commercial development of the ZoMaxx Stent; and (ii) the designation of the "Jaguar Stent" as the Second Generation Stent.

      3.      Abbott is a global healthcare company based in Illinois. ALVE is a wholly-owned subsidiary of Abbott. Abbott is an "Affiliate" of ALVE under the Funding Agreement. ALVE owned certain intellectual property rights, and worked with Abbott in certain stent development projects. As it was entitled to do under the Funding Agreement, Abbott, which was working with ALVE on the development of the ZoMaxx Stent, ultimately determined that further development of the ZoMaxx Stent was not commercially reasonable due to ZoMaxx not meeting its primary clinical endpoint. It therefore terminated the ZoMaxx Stent development program. Birmingham complains that the termination was improper, and that it has been damaged in excess of $70 million. ALVE seeks a ruling that neither ALVE nor any or its affiliates, including Abbott, violated any duties to Birmingham or any of the other Investors through the termination of the ZoMaxx Stent.

      4.      The Parties also dispute what constitutes the Second Generation Stent. In April 2006, Abbott completed its acquisition of Guidant Corporation's vascular business, including Guidant's drug eluting stent known as Xience or Xience V (the "Xience Stent"). At the time of the acquisition, Xience had already received European regulatory approval (i.e., a "CE Mark"). In addition, the international and United States clinical trials of Xience (known as

1430182v.5

"Spirit II" and "Spirit III," respectively) were already fully enrolled. None of the Development Funding (as provided in the Funding Agreement) was used in the development of Xience.

      5.      Nevertheless, Birmingham claims that the Xience Stent is the Second Generation Stent under the Funding Agreement and demands royalty and milestone payments relating to its development. Upon the termination of the ZoMaxx Stent program, the next drug eluting stent to be commercialized from Abbott's drug eluting stent program and which utilized the Development Funding was a program referred to as the "Jaguar Stent." The Jaguar Stent constitutes the Second Generation Stent under the Funding Agreement. ALVE therefore also seeks a ruling that the Jaguar Stent, not the Xience Stent, is the Second Generation Stent.

### The Parties

      6.      ALVE is an indirect, wholly-owned subsidiary of Abbott organized under the laws of Ireland. ALVE is essentially a holding company for intellectual property, and owns, among other things, the intellectual property associated with the ZoMaxx Stent.

      7.      Upon information and belief, Birmingham is a Cayman Islands corporation organized and existing under the laws of the Cayman Islands. Birmingham is managed by Elliott International Capital Advisors, Inc., a Delaware corporation with its principal place of business in New York City.

### The Agreement to Arbitrate

      8.      The Funding Agreement contains an unequivocal and broad arbitration clause. Section 15.6 provides:

> Alternative Dispute Resolution. The Parties recognize that bona fide disputes may arise which relate to the Parties' rights and obligations under this Agreement. The Parties agree that any such dispute shall be resolved by Alternative Dispute Resolution ("ADR") in accordance with the procedure set forth in Exhibit 15.6. ...

1430182v.5

9.     The only exception to the ADR provisions of the Funding Agreement is for an action to enforce the parties' confidentiality obligations under the Funding Agreement, which actions may be brought before a court of competent jurisdiction.

10.    The ADR procedures set forth in Exhibit 15.6 of the Funding Agreement provide that to initiate an ADR proceeding, the party must first provide written notice of the dispute to the other party, and allow for 28 days to attempt to resolve the dispute through good-faith negotiations. If the parties fail to resolve the dispute and/or to meet during that 28-day period, either party may institute an ADR proceeding by providing written notice of the issues to be resolved.

11.    In a letter dated January 3, 2008, ALVE informed Birmingham of its desire to resolve the dispute regarding the termination of the ZoMaxx Stent through the ADR procedures of the Funding Agreement. Twenty-eight days have since passed, and the parties have been unable to resolve their dispute. In a letter dated January 4, 2008, Birmingham provided notice of the dispute regarding whether the Xience Stent constituted the Second Generation Stent under the Funding Agreement. Twenty-eight days have since passed, and the parties have been unable to resolve that dispute either.

## Factual Background

### Drug Eluting Stents

12.    Coronary stents are devices that are inserted into coronary arteries which act as scaffolding to assist in opening blocked arteries and improving blood flow. The ZoMaxx Stent and the Xience Stent are what are referred to as "drug eluting stents" or "DESs." The ZoMaxx and Xience Stents, like all drug eluting stents, consist of three parts: (i) the stent body, which is a metal mesh tubular scaffold; (ii) a drug compound that is eluted from the stent; and (iii) a polymer that holds the drug compound onto the stent and controls the release of the drug

4

1430182v.5

over time. The drug compound is intended to inhibit the growth of scar tissue within the stented area, which can otherwise result in renewed blockage of the stented artery.

**The Funding Agreement**

13.    Pursuant to the Funding Agreement, ALVE and its affiliates, including Abbott, were to use "commercially reasonable efforts" to obtain regulatory approval of, among other things, the ZoMaxx Stent and a contemplated successor product, referred to in the Funding Agreement as the "Drug-Eluting Stent – 2nd Generation." The Second Generation Stent is defined as "the next drug eluting stent commercialized from the DES Program in which the Development Funding is utilized following the ZoMaxx drug eluting stent which would include ABT-578 in combination with another drug or drugs; or a new drug other than ABT-578; or a combination of other drugs not including ABT-578; or any other modification, including but not limited to, new stent materials (e.g. new alloys, bioresorbable materials) or new polymers which require significant clinical trials beyond those performed for ZoMaxx pursuant to this Agreement."

14.    The Funding Agreement does not require that ALVE or Abbott bring the ZoMaxx Stent – or any other stent – to market. Instead, the parties to the Funding Agreement recognized that ALVE and Abbott required, and retained, the discretion to make a reasonable business judgment that any of the products being developed pursuant to the Funding Agreement were not viable. The Funding Agreement gave ALVE discretion over the development of the products at issue, providing that "ALVE may discontinue any or all of the Products ... if ALVE, based upon its reasonable commercial judgment without giving consideration to its obligations under this Agreement, shall have determined to discontinue any such product."

15.    In exchange for their investment in the development program, the Investors were to receive royalty and milestone payments relating to the ZoMaxx Stent and

5

Second Generation Stent if and when those products achieved certain regulatory approvals and commercial benchmarks.

16.    Abbott negotiated the Funding Agreement with the Investors on behalf of ALVE and is an "Affiliate" of ALVE as that term is defined under the Funding Agreement: i.e., Abbott is a "corporation or other form of business organizations, which directly or indirectly owns [or] controls ... [ALVE]."

17.    Abbott has certain powers and responsibilities under the Funding Agreement as an "Affiliate" of ALVE. For example, the Funding Agreement expressly provides that Abbott may be responsible for the conduct and funding of the development program. And Abbott did, in fact, take responsibility for developing the ZoMaxx Stent. In addition, Abbott – not ALVE – would (i) regularly report to the Investors on the progress of the development program and (ii) coordinate the payment of any royalties to which the Investors were entitled under the Funding Agreement.

**Acquisition of Xience Stent**

18.    In April 2006, Abbott completed its acquisition of Guidant's vascular business, including the Xience Stent. At the time of the acquisition, Guidant had already completed the first clinical trial of Xience, referred to as "Spirit I." The results of this trial were promising. A second international clinical trial, referred to as "Spirit II," was fully enrolled and underway, as was a third trial in the United States, referred to as "Spirit III." In addition, at the time of the acquisition, Xience had already received its CE Mark from the European regulators.

**Termination of the ZoMaxx Stent Development Program**

19.    Like the Xience Stent, the ZoMaxx Stent went through a rigorous research and development process, including several in-depth clinical trials. The results of the initial, limited testing, referred to as "ZoMaxx IVUS," which was a clinical trial involving 40 patients,

6

were promising. Based on these results, and the success of Xience during the Spirit I clinical trial, Abbott determined that it would develop both Xience and ZoMaxx for commercial use.

   20. But the results of a subsequent, more-involved clinical trial of the ZoMaxx Stent, referred to as "ZoMaxx I," which was an international pivotal study involving 400 patients, were less promising. The ZoMaxx Stent failed to meet its primary endpoint in the clinical trial, and did not perform as well as other approved drug-eluting stents that would be competitors of the ZoMaxx Stent. In particular, the ZoMaxx Stent suffered greater late lumen loss than Boston Scientific's Taxus stent, against which it was being compared in the clinical trial. Based in part upon the results of this clinical trial, the ZoMaxx Stent was denied regulatory approval in Europe. Specifically, the Medicines Evaluation Board ("MEB") denied the application for a CE Mark for the ZoMaxx Stent in September 2006.

   21. Based in part upon its assessment of this clinical data and the denial of its application for a CE Mark, Abbott ultimately determined in or about October 2006 that it would no longer pursue the commercial development of the ZoMaxx Stent. It informed the Investors of that decision by way of a letter dated October 20, 2006. This decision was commercially reasonable and in accordance with ALVE's and Abbott's obligations under the Funding Agreement.

**Second Generation Stent**

   22. The Investors were informed on or about December 13, 2006, that Abbott had designated the Jaguar Stent as the Second Generation Stent under the Funding Agreement. Unlike the Xience Stent, the Jaguar Stent is being developed specifically utilizing Development Funding out of the Funding Agreement's Development Program. Abbott has dedicated significant resources to the Jaguar Stent's development. Development activities are progressing in support of an Investigational Device Exemption ("IDE") planned for submission to the United

7

States Food and Drug Administration to support a clinical trial in the United States. Abbott

plans to make an IDE submission and initiate a clinical trial in the first half of 2008. Abbott also

plans to submit the Jaguar Stent for CE Mark approval before European regulators during the

second half of 2008.

23.    In contrast to the Jaguar Stent, no Development Funding, as that term is

defined under the Funding Agreement, has ever been used to develop the Xience Stent. Indeed,

as explained above, the research and development of the Xience Stent was well under way before

it was acquired by Abbott. The Xience Stent had already been awarded a CE Mark at the time it

was acquired by Abbott, and the "Spirit II" and "Spirit III" clinical trials of Xience were also

underway and fully enrolled. Additional funding of the Xience Stent development has been

provided by Abbott and its affiliates alone, not the Investors.

24.    In addition, work on the Second Generation Stent under the Funding

Agreement began prior to Abbott's acquisition of Xience. Exhibit 1.7 of the Funding Agreement

notes that "[d]uring 2005, Abbott Vascular Devices will be conducting preliminary animal and

clinical work to determine the pathway for further development of the Drug Eluting Stent – 2nd

Generation program." And although the Second Generation Stent has evolved over time, it has

always been developed on a separate track from the Xience Stent.

**Birmingham's Lawsuit Against Abbott**

25.    On or about December 17, 2007, Birmingham filed a lawsuit against

Abbott in the United States District Court for the Southern District of New York (the

"Litigation"). In the Litigation, Birmingham alleged that Abbott had violated a guaranty

agreement between Abbott and ALVE. That agreement, the "Keep Well Agreement," was

signed on the same day as the Funding Agreement, i.e., May 2, 2005.

8

26.     Among other things, the Keep Well Agreement provided that Abbott would provide sufficient equity capital to ALVE so that ALVE could "meet its obligations to its creditors and to the Investors." It also provided that "Abbott will use Commercially Reasonable Efforts to further the commercial interests and success of ALVE, including providing research and development, clinical trial and sales and marketing support for cardiovascular and endovascular medical device products produced by ALVE...." The Investors, including Birmingham, were identified as beneficiaries of the Keep Well Agreement.

27.     The crux of Birmingham's argument in the Litigation is that Abbott terminated the ZoMaxx Stent even though it was a commercially viable product, and that such termination violated Abbott's duties under the Keep Well Agreement. Birmingham purportedly sues as a third-party beneficiary to the Keep Well Agreement.

28.     The Keep Well Agreement is effectively a guaranty of the Funding Agreement, and the ZoMaxx Stent Development Program is governed by the Funding Agreement. Thus, Birmingham's claims in the Litigation necessarily implicate the rights of ALVE and its Affiliates, including Abbott, under the Funding Agreement and its ADR provision.[1]

### Relief Requested

29.     ALVE seeks a determination that neither it, nor any of its affiliates, including Abbott, violated any duty to Birmingham under the Funding Agreement with respect to: (i) the decision to no longer pursue the commercial development of the ZoMaxx Stent; and (ii) the designation of the Jaguar Stent – and not the Xience Stent – as the Second Generation Stent.

---

[1] As a result, Abbott has filed a motion in the Litigation to compel arbitration of Birmingham's claims. ALVE has simultaneously filed a motion to intervene and to compel arbitration of the same dispute. Those motions are currently pending.

1430182v.5

Dated:  February 11, 2008
        New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By: _William F. Cavanaugh Jr. /C_
    William F. Cavanaugh, Jr.
    Nicolas Commandeur

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Claimant Abbott Laboratories
Vascular Enterprises Ltd.*

10

1430182v.5