UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
BIRMINGHAM ASSOCIATES LTD,

                Plaintiff,

            v.

ABBOTT LABORATORIES,

                Defendant.
------------------------------------x

Case No. 07 Civ. 11332 (SAS)

ECF Case

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THIS LITIGATION

PATTERSON BELKNAP WEBB & TYLER LLP
William F. Cavanaugh, Jr. (WC-3474)
Nicolas Commandeur (NC-4280)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendant Abbott Laboratories*

# **TABLE OF CONTENTS**

**PAGE**

I. THE DISPUTE BETWEEN ABBOTT AND BIRMINGHAM SHOULD BE ARBITRATED AND THIS LITIGATION SHOULD BE DISMISSED. ................................................................................................... 2

    A. Birmingham Does Not Dispute That the Close Relationship Between Abbott and ALVE Supports Compelling Arbitration. .............................. 2

    B. The Funding Agreement Is Inexorably Intertwined With This Dispute. ................................................................................................... 3

    C. The Keep Well Agreement Does Not Provide That Disputes Relating To Its Enforcement Will Be Litigated In a Court of Law. ....................... 6

II. THIS LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION BETWEEN ALVE AND BIRMINGHAM. ............................ 8

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Acquaire v. Canada Dry Bottling,
  906 F. Supp. 819 (E.D.N.Y. 1995) ..........................................................................9

Denney v. Jenkens & Gilchrist,
  412 F. Supp.2d 293 (S.D.N.Y. 2005) ......................................................................3

Fluor Daniel Intercontinental, Inc. v. General Elec. Co.,
  No. 98 Civ. 7181(WHP), 1999 WL 637236 (S.D.N.Y. Aug. 20, 1999) .................3

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,
  371 F. Supp.2d 571 (S.D.N.Y. 2005) ......................................................................3

Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,
  891 F. Supp. 946 (S.D.N.Y. 1995) ..........................................................................9

HG Estate, LLC v. Corporacion Durango, S.A.,
  271 F. Supp.2d 587 (S.D.N.Y. 2003) ...................................................................5, 7

Israel v. Chabra,
  Nos. 04 Civ. 4599, 04 Civ. 5859 (DC), 2005 WL 589400 (S.D.N.Y.
  Mar 11, 2005) .......................................................................................................5, 7

JLM Indus. Inc. v. Stolt-Nielsen,
  387 F.3d 163 (2d Cir. 2004) .................................................................................2, 3

MS Dealer Serv. Corp. v. Franklin,
  177 F.3d 942 (11th Cir. 1999) .................................................................................3

Belying its true motivation in opposing Abbott's motion to compel arbitration, Birmingham's lengthy opposition brief repeatedly complains about the "extraordinarily crabbed" nature of the ADR procedures set forth in the Funding Agreement.[1] (Opp'n Br. at 2.) That Birmingham may no longer like the procedures for resolving disputes to which it previously agreed, however, does not alter the fact that it is bound to adhere to its agreement.

Birmingham's efforts to distance itself and the allegations in its Complaint from its Funding Agreement with ALVE and its Affiliates ignore the following undisputed facts:

- Birmingham's standing to bring an action under the Keep Well Agreement depends entirely upon its status as an "Investor" under the Funding Agreement. Were it not for the Funding Agreement, Birmingham would undeniably have no rights relating to the Keep Well Agreement.

- Birmingham's damages claimed against Abbott – royalty and milestone payments relating to the ZoMaxx Stent (Cavanaugh Decl. Ex. A ¶ 49) – arise exclusively under the Funding Agreement.

- Abbott's primary defense to Birmingham's claims – i.e., that the ZoMaxx Stent was not commercially viable and that its discontinuance was therefore reasonable – is based on the Funding Agreement which grants ALVE and its Affiliate Abbott the right to discontinue under such circumstances.

- Birmingham's right to bring any breach of contract claim against Abbott under the Keep Well Agreement depends in the first instance upon its satisfaction of its own performance obligations arising exclusively under the Funding Agreement.

These facts compel arbitration under settled Second Circuit law and the strong federal policy favoring arbitration. This case should be dismissed and the dispute should be referred to arbitration.

---

[1] Unless otherwise indicated, capitalized terms herein have the same meanings ascribed to them in Abbott's moving brief. References to "Opp'n Br." are to Birmingham's brief in opposition to Abbott's motion; references to "Moving Br." are to Abbott's moving brief.

1439139v.1

## I. THE DISPUTE BETWEEN ABBOTT AND BIRMINGHAM SHOULD BE ARBITRATED AND THIS LITIGATION SHOULD BE DISMISSED.

This case is precisely the type in which courts in the Second Circuit compel signatories to arbitration agreements (such as Birmingham) to arbitrate their claims with nonsignatories to those agreements (such as Abbott). As explained in Abbott's moving brief, the Second Circuit has recognized that "a non-signatory to an arbitration agreement [such as Abbott] may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed ... and the issues that had arisen' among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." JLM Indus. Inc. v. Stolt-Nielsen, 387 F.3d 163, 177 (2d Cir. 2004) (quotations omitted). Abbott undeniably satisfies this standard.

### A. Birmingham Does Not Dispute That the Close Relationship Between Abbott and ALVE Supports Compelling Arbitration.

Birmingham does not dispute in its opposition brief, and indeed cannot dispute, that the close relationship between Abbott and ALVE supports compelling arbitration. (Moving Br. at 7-8.) Abbott is indisputably an "Affiliate" of ALVE under the terms of the Funding Agreement. The Investors, including Birmingham, were aware not only of the corporate relationship between Abbott and ALVE, but also of Abbott's central role with respect to the Funding Agreement. For example, Abbott, not ALVE, negotiated the Funding Agreement. (Kipperman Decl. ¶ 6.) And Abbott, not ALVE, would regularly report to the Investors on the progress of the development program (as required by the Funding Agreement) and coordinate the payment of any milestone or other payments due the Investors (also as required by the Funding Agreement). (Id.) Thus, Abbott was no stranger to the Funding Agreement and interacted with the Investors pursuant to its terms.

Given the relationship between Abbott and ALVE, and Abbott's central role in the administration of the Funding Agreement, Birmingham should be estopped from refusing to abide by the Funding Agreement's arbitration provisions with respect to its claims against Abbott. See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 371 F. Supp.2d 571 (S.D.N.Y. 2005) (dismissing plaintiff's securities fraud action in favor of arbitration with a non-signatory parent pursuant to an arbitration clause in the partnership agreement between plaintiff and investment advisor, which was 99% owned by parent); Fluor Daniel Intercontinental, Inc. v. General Elec. Co., No. 98 Civ. 7181(WHP), 1999 WL 637236, *6 (S.D.N.Y. Aug. 20, 1999) (granting motion to compel arbitration under an estoppel theory where a non-signatory defendant owned fifty percent of entity that was signatory to an agreement with plaintiff that contained an arbitration clause).

### B. The Funding Agreement Is Inexorably Intertwined With This Dispute.

The Funding Agreement is clearly "intertwined" with the claim asserted by Birmingham in this lawsuit. Birmingham suggests that the equitable estoppel doctrine applies *only* where the claim is "integrally related" to or "bound up" with the arbitrable agreement. (Opp'n Br. at 16-17.) Yet the Second Circuit, which has "had no occasion to specify the minimum quantum of 'intertwined-ness' required to support a finding of estoppel," JLM Indus., 387 F.3d at 178, has nevertheless made it clear that less is required than suggested by Birmingham. See id. ("a signatory may be estopped, '[w]hen each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement'") (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)); Denney v. Jenkens & Gilchrist, 412 F. Supp.2d 293, 298 (S.D.N.Y. 2005) (Scheindlin, J.) (outlining broad

3

range of cases in which courts have compelled arbitration based upon the relationship between the facts of the case and an arbitrable contract).

In any event, even under the heightened standard advocated by Birmingham, there can be no doubt that the Funding Agreement is "intertwined" with this dispute. The Funding Agreement is not mere "background" (Opp'n Br. at 18) to the Keep Well Agreement; it is the document that sets forth the obligations of the development program and provides the Investors with standing even to have an interest in the Keep Well Agreement. Indeed, it is the only agreement that the Investors actually signed relating to the development of the ZoMaxx Stent. It is also the document that establishes certain basic elements of Birmingham's claim in this case, such as Birmingham's alleged damages (i.e., the royalty and milestone payments); Abbott's defense to Birmingham's claims (i.e., that the decision to discontinue the ZoMaxx Stent was commercially reasonable given the results of the research and development conducted pursuant to the Funding Agreement's development program); and Birmingham's own obligations under the Funding Agreement.

Birmingham relies upon a survival clause in the Keep Well Agreement to argue that it could prevail on its claim even in the absence of the Funding Agreement. (Opp'n Br. at 17.) This misses the point. The issue is not whether the Keep Well Agreement could survive notwithstanding some technical invalidity of some aspect of the Funding Agreement. The issue is whether *there would even be* a Keep Well Agreement without the Funding Agreement. The purpose of the Keep Well Agreement, as stated in the agreement's opening paragraphs, was for Abbott "to assure that ALVE will be able to comply with all of its obligations, including its obligations to make payments to the Investors pursuant to the Funding Agreement." (Kipperman Decl., Ex. B, Recital D.) Birmingham cannot rely upon the Keep Well Agreement to avoid its

4

obligation in the Funding Agreement to arbitrate disputes. See HG Estate, LLC v. Corporacion Durango, S.A., 271 F. Supp.2d 587 (S.D.N.Y. 2003) (signatory to contract with arbitration clause was estopped from avoiding arbitration of claim brought against non-signatory pursuant to related indeminification agreement that did not have an arbitration clause); Israel v. Chabra, Nos. 04 Civ. 4599, 04 Civ. 5859 (DC); 2005 WL 589400 (S.D.N.Y. Mar. 11, 2005) (same).[2]

Similarly unavailing are Birmingham's efforts to distinguish the dispute regarding the ZoMaxx Stent from the dispute regarding the Xience Stent that the parties agree must be arbitrated. In particular, in order to evaluate Birmingham's contention that Abbott abandoned the ZoMaxx Stent prematurely so that it could instead dedicate its resources to the Xience Stent, the fact-finder must evaluate Birmingham's contention that the Xience Stent is the Second Generation Stent under the Funding Agreement, thereby entitling Birmingham to royalty and milestone payments relating to Xience. If Birmingham is correct in its claim regarding Xience, then its damages stemming from Abbott's allegedly improper discontinuance of ZoMaxx would at least be mitigated. But Birmingham's claim regarding Xience depends entirely upon the interpretation of the Funding Agreement. Given how integral the Funding Agreement is to Birmingham's claims, Birmingham should not be permitted to circumvent the ADR procedures to which it agreed.

---

[2] Birmingham attempts to distinguish these cases by arguing (i) that the Keep Well Agreement is not a "guaranty"; and (ii) that the Keep Well Agreement reflects an "agreement to litigate." (Opp'n Br. at 20, n.7.) Both argument are unavailing. First, the Keep Well Agreement is, in fact, an agreement whereby Abbott effectively guarantees ALVE's performance under the Funding Agreement. And while Birmingham disputes whether the Keep Well Agreement satisfies all of the technical requirements of a "guaranty" under New York law (Opp'n Br. at 12-13) there can be no doubt that the Keep Well Agreement shares the same type of "relatedness" to the Funding Agreement as a guaranty for purposes of the equitable estoppel doctrine. Second, as explained below, the Keep Well Agreement does not contain, as Birmingham suggests, an "agreement to litigate." (Id.) But even if it did include such an agreement, it would not trump the presumption in favor of arbitration. See HG Estate 271 F. Supp.2d at 595 (holding that arbitration clause trumped litigation forum selection clause in guaranty agreement).

5

1439139v.1

### C. The Keep Well Agreement Does Not Provide That Disputes Relating To Its Enforcement Will Be Litigated In a Court of Law.

Relying exclusively upon the Black's Law Dictionary, Birmingham attempts to escape the equitable estoppel doctrine by claiming (falsely) that "the parties affirmatively *agreed* that claims under the [Keep Well Agreement] may be brought in a judicial forum." (Opp'n Br. at 7 and 9 (emphasis in original).) The Keep Well Agreement reflects no such agreement on bringing claims. As Birmingham concedes, the Keep Well Agreement never mentions claims being brought in a judicial forum. Instead, it simply provides that the Investors are entitled to bring an "action" without specifying where it should be brought. Birmingham uses the Black's Law Dictionary to extrapolate that the reference to an "action" must mean that "there was an agreement that Birmingham would have recourse to a judicial forum for that claim." (Opp'n Br. at 7.) This reading, however, ignores entirely the context of the Keep Well Agreement and its relationship to the simultaneously-executed Funding Agreement. Taken in context, the reference to "action" in the Keep Well Agreement must include, at least in certain circumstances, the arbitration of claims.

Specifically, the Keep Well Agreement provides that the Investors may join and assert claims against ALVE in any "action" that they bring against Abbott under the Keep Well Agreement. (Kipperman Decl., Ex. B § 2(b) ("separate action or actions may be brought and prosecuted against Abbott whether or not action is brought against ALVE and whether or not ALVE is joined in any such action or actions").) Because ALVE has no obligations to the Investors under the Keep Well Agreement, any action brought by the Investors against *both* Abbott and ALVE – as envisioned by this clause and as conceded as a possibility by Birmingham (Opp'n Br. at 10) – could only be based upon an alleged breach by ALVE of the Funding Agreement. As such, it would be subject to the binding ADR procedures of that

6

agreement. Thus, to the extent the word "action" in the Keep Well Agreement refers to an "action" against ALVE, it surely means an arbitration, *not* a lawsuit in a court of law. Similarly, any such "action" involving both Abbott and ALVE, would have to be arbitrated, not filed as a lawsuit in a court of law. As such, the term "action" in the Funding Agreement does not require an action in a court of law to the exclusion of arbitration.

Moreover, even if the Keep Well Agreement reflected an agreement to litigate – which it does not – that agreement would not trump the arbitration provision in the Funding Agreement. The court in HG Estate, LLC v. Corporacion Durango, S.A., 271 F. Supp.2d 587 (S.D.N.Y. 2003), faced a situation that was strikingly similar to this case. There, a seller of certain businesses brought a claim against the parent of the purchaser based upon the parent's indemnification agreement. The underlying purchase agreement contained an arbitration clause, but the indemnification agreement contained a forum selection clause indicating that the parties submitted to the jurisdiction of the "United States Federal or New York State court[s] sitting in Manhattan in the City of New York." Id. at 591. On the question "whether the arbitration forum selection clause trumps the litigation forum selection clauses," the Court held that "primacy should go to the arbitration clause …[based upon the] public policy [in favor of arbitration], and … considerations of judicial economy." Id. at 591, 595. See also Israel, 2005 WL 589400, at *4 ("While forum selection clauses are to be enforced by the courts, the federal policy favoring arbitration clauses is stronger, receiving expression in legislation.") The same result should follow here.

7

1439139v.1

## II.  THIS LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION BETWEEN ALVE AND BIRMINGHAM.

Birmingham does not dispute in its opposition papers that this litigation should be dismissed if this Court grants Abbott's motion to compel arbitration. (Moving Br. at 11 (citing cases).)

With respect to Abbott's alternative request that this litigation be stayed in favor of the pending arbitration if Abbott's motion to compel is denied, Birmingham's opposition is unavailing. Birmingham asserts that there is no currently pending ADR proceeding between Birmingham and ALVE, and that Abbott's suggestion to the contrary in its moving brief is "wrong." (Opp'n Br. at 21.) The reality is that both ALVE and Birmingham exchanged letters, as required under the ADR procedures of the Funding Agreement, asserting disputes that they each wish resolved. This formal notice was a necessary predicate to filing a Request for ADR Proceedings: following 28 days after service of such notice, "*either* Party may institute an ADR proceeding…" (Kipperman Decl., Ex. A, Ex. 15.6 (emphasis added).) Pursuant to these procedures, ALVE served on Birmingham a Request for ADR Proceeding (Feb. 19, 2008 Affirmation of George K. Foster, Ex. F) seeking resolution of (i) the dispute regarding the ZoMaxx Stent that is at issue in this litigation; and (ii) whether the Xience Stent constitutes the Second Generation Stent under the Funding Agreement (the issue that Birmingham raised in its own notice of dispute (Cavanaugh Decl. Ex. F)).

Thus, the ADR procedures were in motion prior to Abbott filing this motion, and there is, indisputably, an ADR proceeding currently pending that implicates the issues raised in this lawsuit. That proceeding is presently being held in abeyance because Birmingham has refused to participate in an ADR resolving these two issues. (Feb. 29, 2008 Decl. of Nicolas

8

1439139v.1

Commandeur, Exs. A, B & C.) As a result of Birmingham's refusal, Abbott is forced to litigate this motion before an ADR proceeding on both disputes can continue.

As explained in ALVE's motion to intervene and to compel arbitration, both the ZoMaxx Dispute and the Xience Dispute should be subject to arbitration. If this Court grants ALVE's motion (but denies Abbott's motion to compel arbitration), then the litigation between Abbott and Birmingham should be stayed until ALVE's arbitration is complete. In that case, ALVE's arbitration will cover the same issues as this litigation, and could effectively resolve the dispute in this case. Proceeding with this litigation while the arbitration between ALVE and Birmingham is simultaneously proceeding would result in inefficiencies and potentially-inconsistent outcomes. See Acquaire v. Canada Dry Bottling, 906 F. Supp. 819, 838 (E.D.N.Y. 1995); Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp., 891 F. Supp. 946, 954-55 (S.D.N.Y. 1995).

But even if this Court were to deny Abbott's motion to compel arbitration *and* ALVE's motion to intervene and compel arbitration, this litigation should still be stayed pending the arbitration between ALVE and Birmingham regarding the Xience Dispute. Birmingham concedes that the Xience Dispute must be resolved through the ADR procedures of the Funding Agreement. (Opp'n Br. to ALVE Mot. at 20.) The decision in that arbitration is unquestionably relevant to the outcome of this litigation.

As explained in Abbott's moving brief (Moving Br. at 13), Birmingham's claim in this litigation is that it was damaged by Abbott's discontinuance of the ZoMaxx Stent so that Abbott could dedicate more resources to the Xience Stent (Cavanaugh Decl., Ex. A ¶ 47). This claim would be undermined if the arbitrator determines that Birmingham is entitled to payments relating to the Xience Stent. In that case, Abbott's alleged "breach" of its duties under the Keep

Well Agreement would actually work, at least to some degree, to Birmingham's benefit, thereby mitigating its damages. In its opposition papers, Birmingham does not dispute that this is so. Thus, in order to preserve judicial resources and avoid potentially inconsistent results, this Court should stay this litigation pending resolution of the arbitration between ALVE and Birmingham, regardless of the outcome of Abbott's motion to compel.

## CONCLUSION

For the foregoing reasons, and for all of the reasons set forth in Abbott's moving brief, Abbott respectfully requests that this Court compel arbitration of the dispute between Abbott and Birmingham and dismiss this litigation, or, in the alternative, stay this litigation pending resolution of the dispute between ALVE and Birmingham through arbitration.

Dated: February 29, 2008
       New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By: /s/ William F. Cavanaugh, Jr.
    William F. Cavanaugh, Jr. (WC-3474)
    Nicolas Commandeur (NC-4280)

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

*Attorneys for Defendant Abbott Laboratories*